**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| KIT-YIN SNYDER AND RICHARD HAAS,<br><br>Plaintiffs,<br><br>v.<br><br>ERIC ADAMS, Mayor of the City of New York, in his official capacity, and THE CITY OF NEW YORK,<br><br>Defendants. |

Case No. 22-CV-03873 (LAK)

## <u>PLAINTIFFS' MEMORANDUM OF LAW IN</u>

## <u>OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..........................................................................................1

FACTUAL BACKGROUND ..........................................................................................2

    New York City Commissions Plaintiffs to Collaborate to Create the Artworks ................3

    Plaintiff Snyder's Contributions to the Artwork ..................................................................3

    Plaintiff Haas' Contributions to the Artwork ......................................................................4

    The Removal Plan ................................................................................................................6

ARGUMENT ..........................................................................................8

I.     The Applicable Standard ............................................................................8

II.    The Complaint Sufficiently Pleads A Claim for Violation of VARA ......................9

III.   Defendants' Arguments Fail ...................................................................10

    A.    The Complaint Sufficiently Pleads that the Artwork is of Recognized Stature ................................................................10

    B.    The Complaint Sufficiently Pleads Harm to Plaintiffs' Honor and Reputation ..................................................................13

    C.    Defendants' Arguments About Whether the Works Constitute Visual Art And Are Separate Pieces Are Based On Mischaracterizing the Complaint ....................................................16

    D.    The Works are Not Covered by Any Exception to VARA .........................20

         a.    Defendants Falsely Mischaracterize The Destruction of the Works as "Relocation" ....................................................20

         b.    Defendants Arguments Concerning the Building Exception Fail for Multiple Reasons ................................................21

         c.    Contrary to Defendants' Argument, the Complaint Does Not Allege That Upright Has Been Modified as a result of the "Passage of Time" ..................................................23

IV.   Should It Be Warranted, Plaintiff Respectfully Requests Permission To File a Motion for Leave to Amend the Complaint ..................................................23

CONCLUSION ..........................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009)...............................................................................8

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007)...........................................................................8, 19

*Carter v. Helmsley-Spear, Inc.*
  861 F. Supp. 303 (S.D.N.Y. 1994), aff'd in part, vacated in part, rev'd in
  part, 71 F.3d 77 ...........................................................10, 12, 13, 15, 16, 17, 18, 23

*Castillo v. G&M Realty L.P.*
  950 F.3d 155 (2d Cir. 2020)...................................................................11

*Cortec Indus., Inc. v Sum Holding L.P.*
  949 F.2d 42 (2d Cir. 1991)....................................................................24

*Cresci v. Mohawk Valley Cmty. Coll.*
  693 Fed. Appx .21 (2d Cir 2017).............................................................25

*Holbrook v. City of Pittsburgh*
  No. 18-539, 2019 U.S. Dist. LEXIS 159129 (W.D. Pa. Sep. 16, 2019).................................21

*Hunter v. Squirrel Hill Assocs., L.P.*
  413 F. Supp. 2d 517 (E.D. Pa. 2005) ...............................................12, 13

*In re ITT Educ. Servs., Inc. Sec. Litig.*
  34 F. Supp. 3d 298 (S.D.N.Y. 2014)...........................................................8

*Kopchik v. Town of E. Fishkill*
  759 Fed. Appx. 31, 2018 U.S. Dist. LEXIS 36443 (2d Cir. 2018)........................................25

*Leveille v. Upchurch*
  2021 U.S. Dist. LEXIS 248486 .............................................................14, 16

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*
  797 F.3d 160 (2d Cir. 2015)...................................................................25

*Lubner v. City of Los Angeles*
  45 Cal. App. 4th 525, 53 Cal. Rptr. 2d 24 (1996)..................................................11

*Martin v. City of Indianapolis*
  192 F.3d 608 (7th Cir. 1999) ........................................................10, 12, 13

*Massachusetts Museum of Contemporary Art Foundation, Inc. v. Buchel*
   593 F.3d 38 (1st Cir. 2010) ...............................................................................14, 16

*Pavia v. 1120 Ave. of the Americas Assoc.*
   901 F.Supp. 620 (S.D.N.Y.1995) ...........................................................13, 14, 19

Statutes

17 U.S.C.
   § 101 .........................................................................................................................9, 19
   § 106A ...........................................................................................................................9
   § 106A(a)(3) ...................................................................................................................9
   § 106A(a)(3)(A) .......................................................................................................9, 22
   § 106A(a)(3)(B) .......................................................................................................9, 10
   § 106A(c)(2) .................................................................................................................22
   § 113(d)(1) ...................................................................................................................21

Federal Rules of Civil Procedure Rule 12(b)(6) ...................................................1, 8

New York City Charter § 224 ..................................................................................3

Other Authorities

Christopher J. Robinson, The "Recognized Stature" Standard in the Visual Artists Rights
   Act, 68 Fordham L. Rev. 1935, 1945 n.84 (2000) .................................................11

23

Plaintiffs Kit-Yin Snyder ("Snyder") and Richard Haas ("Haas") (collectively, "Plaintiffs"), respectfully submit this Memorandum of Law in support of their Opposition to Defendant Eric Adams and the City of New York's (the "City," and collectively "Defendants")Motion to Dismiss ("Motion") Plaintiffs' Complaint (the "Complaint").

## PRELIMINARY STATEMENT

Defendants seek to dismiss Plaintiffs' Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiffs have not sufficiently pled that: (i) Plaintiffs' artwork is of recognized stature, and (ii) removing or relocating the artwork would be prejudicial to Plaintiffs' "honor or reputation," Defendants further argue that: (iii) the artwork is covered by an exception to the Visual Artists Rights Act ("VARA").

However, as explained below, the allegations in the Complaint easily satisfy the pleading standard applicable to a motion to dismiss. Indeed, contrary to Defendants' argument that the Complaint fails to sufficiently plead that the artworks at issue are of recognized stature and that Plaintiffs' reputation would be harmed by its destruction or modification, not only does the Complaint explicitly contain these allegations, along with supporting facts, but the questions of whether a piece of art is of recognized stature in a relevant community or if an artists' reputation will be harmed, are quintessential issues of fact that cannot be resolved at the pleading stage. Moreover, Defendants' arguments ignore the allegations in the Complaint and improperly rely on the Court's earlier decisions applying the standard for injunctive relief, which the Court itself recognized were subject to revision upon the presentation of evidence.

For all of the foregoing reasons, the Court should deny Defendants' Motion.

## FACTUAL BACKGROUND

As set forth in greater detail in the Complaint, Plaintiffs are two world renowned contemporary American artists who seek to protect their collaborative art installations which have or will be destroyed as part of the City's plans to destroy the existing Manhattan Detention Complex and create a new Manhattan Detention Facility (the "Facility") (Declaration of Genan F. Zilkha, dated August 8, 2022 (the "Zilka Decl."), Ex. G Complaint ¶¶ 1,5).  Plaintiffs' contributions to the New York art scene continue to be appreciated to date, with both Artists' works and accomplishments being celebrated by the community at large.  *See, e.g.*, *id.* at ¶¶ 37, 38, 46, 49.

Plaintiff Kit-Yin has worked as an artist since the 1970s and made major contributions to the art scene, exhibiting her work at sites in both the United States and abroad. Snyder's work and accomplishments have been the topic of news coverage and recognition by the art community. (*Id.* ¶¶ 36-37). Snyder has also received numerous grants and awards for her work including from the National Endowment for the Arts and the New York Foundation of Arts and the 1988  Excellence in Design, Art Commission, New York City for the artworks at issue. (*Id.* ¶ 38).

Plaintiff Richard Haas, a renowned painter and muralist, has had a long and successful career in both the public and the private sectors of artistic achievement. *See id.*  ¶ 45; ¶ 46 ("Haas' influence in public art can be seen throughout the United States on the walls and in the public spaces of most major cities. Haas has created fifty three exterior, trompe l'oeil murals throughout the United States and Germany to date"); ¶ 47 ("Haas' works of art serve as significant markers of memory and history within the urban landscape"); ¶ 48 ("Haas has obtained many distinguished awards, grants, and commissions"); ¶ 49 (" Haas' work and

accomplishments have been the topic of news coverage and recognition by the art community").

**New York City Commissions Plaintiffs to Collaborate to Create the Artworks**

When the City constructed the Manhattan Detention Complex, located at 124-125 White Street, the City commissioned artwork for the public space as part of New York City's Percent for Art law, which requires that one percent of the budget for eligible City funded construction projects be spent on public artwork in certain City facilities. *See id.* ¶ 24 ("[b]y bringing artists into the design process, the City's civic and community buildings are enriched."); *see also* New York City Charter § 224.  In 1985, the Percent for Art Fund awarded Snyder and Haas the contract for the site-specific public artwork for the Manhattan Detention Complex North Tower project (the "Artwork"). (*Id.* ¶ 29).

The Artwork was created by Plaintiffs "in joint collaboration" and the design, planning, and implementation spanned more than seven years (*Id.* ¶¶ 2-3; ¶ 32 ("the Artwork in the public plaza outside of the Manhattan Detention Complex was a collaboration between Plaintiff Haas and Plaintiff Snyder.")). The resulting Artwork represents the immigrant communities of the Lower East Side, illustrates overlapping cultures, at a site adjacent to the 'melting pot' of immigrant communities residing on the Lower East Side, and conveys a desire of justice for all those being detained in the Manhattan Detention Complex. (*Id.* ¶ 3).

**<u>Plaintiff Snyder's Contributions to the Artwork</u>**

Snyder's portion of the Artwork, collectively referred to as "Justice" (also sometimes known as "Judgment"), includes a sculpture on the roof of the bridge, entitled "Solomon's Throne," a paving pattern on White Street, entitled "Upright," and seven sculptures on the terrace and sidewalk, entitled "The Seven Columns of the Temple of Wisdom." (*Id.* ¶ 40).  The design of the sculptural aspect of the work suggests a portico symbolizing civic justice, while the

paving pattern includes Chinese characters for "upright" and "righteousness," conveying a desire of justice for all those being detained in the Manhattan Detention Complex. (*Id.* ¶ 41).

The central focus of "Solomon's Throne" is the throne of the Old Testament judge, King Solomon, whose name means "peaceable." (*Id.* ¶ 41).There are six symbolic steps leading up to the throne to form a pediment along the top of the bridge – the metaphorical "throne of justice" to link together the North and South towers of the Manhattan Detention Complex physically and symbolically.  (*Id.* ¶ 42).  This creates a metaphorical "Bridge of Sighs" that is placed above the passageway leading from the detention center to the court. (*Id.* ¶ 42)

 "Upright" is a geometric labyrinth of colored pavers, including pictograms of two Chinese characters meaning upright and righteousness, interspersed amongst two rows of apple trees, bordering White Street.  (*Id.* ¶ 43).

"The Seven Columns of the Temple of Wisdom," consist of a pair of columns leading to the gate (the bridge between the North and South towers of the Manhattan Detention Complex), appropriate for a hall of justice, as well as five additional columns at the administrative entrance. The seven columns represent the Seven Pillars of Wisdom in the Temple of Solomon, suggesting a portico symbolizing civic justice.  (*Id.* ¶ 44).

### **Plaintiff Haas' Contributions to the Artwork**

Haas' portion of the Artwork includes two sculptural friezes and a seven-paneled mural. (*Id.* ¶ 50).  The friezes, entitled "The Judgements of Solomon and Pao Kung," are located on a bridge that connects Baxter and Centre Street, constructed with sculptural epoxy and cast stone, and illustrate King Solomon and Pao Kung, a Sung Dynasty Chinese Judge.  ( *Id.* ¶ 51).  This is a dedication to Chinatown, where the Manhattan Detention Complex is located, and the surrounding judicial institutions as well as the Manhattan Detention Complex (*Id.*).

The seven paneled mural, entitled "Immigration on the Lower East Side of New York," is painted directly onto the exterior of the second story of the Manhattan Detention Complex using Keim silicate paint with the intended effect being that the murals appear to be tiles. (*Id.* ¶ 52). "Immigration on the Lower East Side of New York," traces the history of successive waves of immigration in the 19th and 20th century to the Lower East Side and Chinatown. The work is a timeline of the immigration of various groups to New York City. With the work, Haas intended to illustrate overlapping cultures, at a site adjacent to the immigrant communities of the Lower East Side. (*Id.* ¶ 53).

The original design for the sixth panel, intended to represent the Hispanic immigrant culture in the neighboring areas, came under controversy in 1992, and Haas repainted the panel , completing the Artwork in 1997.  (*Id.*  ¶ 54; *see also* ¶ 33 ("the project was further extended when one panel of Haas' original six panel installation of his work "Immigration on the Lower East Side of New York" was repainted in 1997")).  This new panel was not governed by the original contract, but completed after title to the Artwork was transferred to the City.  (*Id.*  ¶ 33, Complaint Ex. A at §§ 1.7, 1.9, 2.1).

Since its completion, the Artwork has been recognized by art experts and other members of the artistic community. *See* Zilkha Decl., Ex. G Complaint ¶ 4 ("The work is treasured by the community and was awarded the Art Commission Award for Excellence in Design in 1988.");  ¶ 5 (describing "the significant value of the works"); ¶ 35 ("The Artwork is a work of recognized stature. The Artwork is viewed as meritorious and is recognized by art experts and other members of the artistic community, and was awarded the Art Commission Award for Excellence in Design in 1988."); ¶ 80 ("The Artwork has received wide public acclaim and approval."); ¶ 37 ("Snyder's work and accomplishments have been the topic of news coverage and recognition by

the art community."); ¶ 49 (" Haas' work and accomplishments have been the topic of news coverage and recognition by the art community."); ¶ 27 (alleging that the Artwork is "important artwork of historical and cultural significance").

### The Removal Plan

In demolishing the Manhattan Detention Complex and replacing it with the Facility as part of the City's BBJ Project, Defendants have advanced a removal plan (the "Removal Plan") for the Artwork. (*Id.* ¶ 55)  Plaintiffs allege that the Removal Plan improperly treats each portion of the Artwork as a separate piece and makes no provision for reuniting the different pieces of the Artwork at a later date. (*Id.* ¶ 58).

In addition, the Removal Plan will completely destroy two portions of the Artwork. (*Id.* ¶ 60) (alleging that the Removal Plan contemplates that the works "Upright" and "Immigration on the Lower East Side" "cannot be salvaged."); ¶ 59 ("the Removal Plan will completely destroy two portions of the Artwork.").[1]

The Removal Plan contemplates storing the Artwork for an unstated period of time on Riker's Island and later reinstalling the salvaged portion of the Artwork at the Facility "or at an alternative site, in consultation with the artist."  (*Id.* ¶ 62)  However, there is no concrete plan in place for consultation with Haas or Snyder,  and the City has failed to provide any type of commitment to the artists to preserve the Artwork in its original form or permanently reinstall the Artwork. (*Id.* ¶¶ 63-65).

---

[1] The Removal Plan proposes the destruction of the original materials of the works, and accounts only for documentation and reproduction of the Artwork in changed media. After 124-125 White Street is demolished, nothing will remain of the destroyed Artwork except photos taken of the Artwork as part of the documentation process proposed by the Removal Plan. The permanent reproduction of the Artwork as contemplated by the Removal Plan is vague and provides no real plan for meaningful "consultation" with the artists that can likely take place during their lifespans.  (Complaint ¶ 62).

At a February 14, 2022 PDC hearing, the PDC rejected the Removal Plan stating, inter alia, "The Commission expresses support and respect for the artist and their work and is disheartened by the lack of maintenance for all the artworks at the site . . ." (*Id.* ¶ 68)

The Removal Plan as presented at an April PDC hearing continued to present vague promises of "reinstallation or reproductions" of the Artwork without setting forth any concrete proposals to ensure consultation with the artists during their respective lifespans. (*Id.* ¶ 70).  On April 11, 2022, the PDC unanimously approved the Removal Plan, expressly commenting that the plan should still include consultation with Snyder and Haas.  (*Id.* ¶ 71).

Plaintiffs did not consent to installation of the works in and around 124-125 White Street specifying that installation in the building may subject their works to destruction, distortion, mutilation, or other modification, by reason of their removal, before or after June 1, 1991.  (*Id.* ¶ 89).  To the contrary, prior to the Plaintiffs installing the Artwork, the City specifically represented, assured, and agreed to the Plaintiffs that it would "not intentionally destroy, damage, alter, modify or change the Art Work in any way…."  *See Id.* ¶¶ 89- 90, Exhibit A, at § 7.4.

Plaintiffs' honor and reputation as artists will be damaged if Defendants act on the City's stated intentions to demolish 124-125 White Street. (*Id.* ¶ 79; ¶ 85 ("Any intentional distortion, mutilation, modification or destruction of Plaintiffs' works of visual art would be prejudicial to Plaintiffs' honor and reputation"); ¶ 39 ("Despite her many accolades, "Justice" remains one of her most prided works. It was Snyder's opportunity to give back to the community to which she first moved when she immigrated to the United States from China"); ¶ 49 ("Despite his many accolades, "Immigration on the Lower East Side of New York" and "The Judgements of

Solomon and Pao Kung" remain amongst Haas' most important and preserved works of cultural

significance and community value")).

Based on the foregoing, Plaintiffs filed their Complaint on May 12, 2022 alleging

violations of VARA (Dkt. 1) and sought a temporary restraining order.  On May 13, 2022 the

Court ordered a temporary restraining order restraining Defendants from "altering, defacing,

modifying, mutilating, destroying, or demolishing the Artwork until and including May 18,

2022." (Dkt. 14).  On May 18, 2022, the Court dismissed defendants New York City Department

of Design and Construction, New York City Department of Cultural Affairs, New York City

Public Design Commission, and New York City Department of Correction (Dkt. 25) and denied

Plaintiffs' Motion for a preliminary injunction (Dkt. 26).  Defendants moved to dismiss the

Complaint on August 8, 2022. (*See* Dkts. 33, 34, 35).

## ARGUMENT

## I.     The Applicable Standard

Defendants misapply the pleading standard under *Twombly* by arguing that Plaintiffs

must prove the elements of VARA at this stage of the proceeding. To survive a motion to dismiss

under Rule 12(b)(6), a plaintiff need only plead sufficient factual allegations "to state a claim to

relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A

claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009).  This standard does "not require heightened fact pleading of

specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl.

Corp.*, 550 U.S. at 570.  The Court "must accept as true all well-pleaded factual allegations in the

complaint, and 'draw [ ] all inferences in the plaintiff's favor.'" *In re ITT Educ. Servs., Inc. Sec.

*Litig.*, 34 F. Supp. 3d 298, 304 (S.D.N.Y. 2014) (quoting *Allaire Corp. v. Okumus*, 433 F.3d 248, 250 (2d Cir. 2006)).  Under this standard and for the reasons below, the Complaint asserts a more than plausible cause of action for violation of the Visual Artists Rights Act, 17 U.S.C. § 106A.

**II.      The Complaint Sufficiently Pleads A Claim for Violation of VARA**

VARA reads in pertinent part:

> (a) ... the author of a work of visual art ...
> (3) ... shall have the right —
> (A) to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right, and
> (B) to prevent any destruction of a work of recognized stature and any intentional or grossly negligent destruction of that work is a violation of that right....

17 U.S.C. § 106A(a)(3).

Here, the Complaint explicitly alleges a violation of VARA sections 106A(a)(3)(A) and 106A(a)(3)(B).  Plaintiffs allege that the Artwork is a work of visual art as defined by 17 U.S.C. § 101 that is covered under VARA (Zilkha Decl., Ex. G Complaint ¶¶ 75, 77, 78); the Artwork is of recognized stature (*id.*  ¶¶ 4, 5, 27, 35, 37, 49, 80, 81, 82, 83); and that Defendants have or will intentionally, or at least with gross negligence, physically destroy the Artwork in an irreparable fashion(*id.* ¶¶ 87, 88, 89); or alternatively that Defendants have or will intentionally distort, mutilate, or otherwise physically modify the Artwork in a way that will present a materially different artistic vision to viewers and will prejudice the Plaintiffs' honor and reputations. (*id.* ¶¶ 79, 39, 49).

Accordingly, because the Complaint alleges a cause of action under VARA and pleads sufficient factual allegations to state a claim to relief that is plausible on its face, the Court should deny the Motion to Dismiss.

III.       **Defendants' Arguments Fail**

Defendants argue that Plaintiffs have not sufficiently pled that: (i) the Artwork at issue is of recognized stature, (ii) the Artworks is visual art for the purpose of VARA, and (iii) removing or relocating the works would be prejudicial to Plaintiffs' "honor or reputation."  Defendants further argue that (iii) the artwork is covered by an exception to VARA.  As explained below, these arguments fail and are entirely improper on a motion to dismiss.

A.       <u>**The Complaint Sufficiently Pleads that the Artwork is of Recognized Stature**</u>

The critical inquiries in determining whether a work is of "recognized stature" as required by § 106A(a)(3)(B) are whether (1) the art in question is viewed as meritorious, and (2) is 'recognized' by art experts, other members of the artistic community, or by some cross section of society.  *See Carter v. Helmsley-Spear, Inc.*, 861 F. Supp. 303, 325 (S.D.N.Y. 1994), aff'd in part, vacated in part, rev'd in part, 71 F.3d 77; *see also, e.g., Martin v. City of Indianapolis*, 192 F.3d 608, 612 (7th Cir. 1999).  Defendants' argument that Plaintiffs do not allege that the Artwork is of a recognized stature fails because Plaintiffs have adequately plead facts to satisfy both prongs of the inquiry.[2]   . *See id.* at 324-25;

Here, contrary to Defendants' arguments that Plaintiffs' allegations are conclusory, the Complaint contains detailed allegations supporting that the Artwork is of high quality, status, and caliber that has been acknowledged as such by the relevant community. (Zilkha Decl., Ex. G Complaint ¶  4 ("The work is treasured by the community"); ¶ 9 (alleging that the artwork "is culturally significant to Chinatown"); ¶ 35 ("The Artwork is a work of recognized stature. The Artwork is viewed as meritorious and is recognized by art experts and other members of the

---

[2] Courts have noted that this *Carter v. Helmsley-Spear* test even "may be more rigorous than Congress intended." *See Martin*, 192 F.3d at 612.  Plaintiffs have plead facts adequate to satisfy the *Carter* test, but note that satisfying this heightened standard may not even be required by VARA.

artistic community, and was awarded the Art Commission Award for Excellence in Design in 1988. The artwork depicts the history of the cultures that have inhabited the Lower East Side and the Chinatown area and are of heightened significance and value because of their geographical placement"); ¶ 80 ("The Artwork has received wide public acclaim and approval"); ¶¶ 37 ("Snyder's work and accomplishments have been the topic of news coverage and recognition by the art community."); ¶ 49 ("Haas' work and accomplishments have been the topic of news coverage and recognition by the art community."); ¶ 27 (alleging that the Artwork is "important artwork of historical and cultural significance").

Moreover, artist reputation also contributes to the "recognized stature" calculation, and even inferred recognition from an artist's successful career can be considered in determining whether a work has achieved recognized stature. *See Lubner v. City of Los Angeles*, 45 Cal. App. 4th 525, 531, 53 Cal. Rptr. 2d 24 (1996).  Again, here, the Complaint has numerous allegations of the high regard of Snyder and Haas.   (Zilkha Decl., Ex. G Complaint ¶¶ 37, 38, 45, 46, 47, 48, 49)

In *Castillo*, the Second Circuit acknowledged the important role artist reputation plays in the "necessarily fluid concept" of recognized stature. *Castillo v. G&M Realty L.P.*, 950 F.3d 155, 166 (2d Cir. 2020).  The court explained that it could "conceive of circumstances under which, for example, a "poor" work by an otherwise highly regarded artist nonetheless merits protection from destruction under VARA." *Id.*  The court went on to explain that

> "This approach helps to ensure that VARA protects "the public interest in preserving [the] nation's culture," *Carter*, 71 F.3d at 81. This approach also ensures that the personal judgment of the court is not the determinative factor in the court's analysis. *See* Christopher J. Robinson, The "Recognized Stature" Standard in the Visual Artists Rights Act, 68 Fordham L. Rev. 1935, 1945 n.84 (2000)."

*Id.*

As acknowledged by the Court at the hearing on Plaintiffs' Motion for a Preliminary Injunction, the works at issue in this suit are by no definition "poor" works.  (Zilka Decl., Ex. F. 53: 4-11 ("I've seen those murals. They're right across from a restaurant that judges in all of the courts down here have been having lunch in on and off for 30 years that just closed, and we all come out of that restaurant after lunch and we see those murals. And, you know, I'm certainly not going to say they're not works of art. Of course they are. And they enliven Baxter Street, which Lord knows could use a lot of enlivening, but there it is.").  Moreover, Plaintiffs are both well-established and esteemed artists, with successful careers spanning decades. *See* Zilkha Decl., Ex. G Complaint at ¶¶ 37, 38, 45, 46, 47, 48, 49.

Therefore, because the Complaint contains sufficient allegations regarding the recognized stature of the Artwork, including, but in no way limited to, Plaintiffs' reputations, Defendants' argument fails.

In addition, and in any event, whether a work of art is of sufficient "recognized stature" under VARA is a finding that "generally depends upon the testimony of experts." *Hunter v. Squirrel Hill Assocs., L.P.*, 413 F. Supp. 2d 517, 520 (E.D. Pa. 2005); *Martin*, 192 F.3d at 612; *Carter*, 861 F.Supp.  Here, not only will the issue be subject to expert testimony, but it will concern the highly factual issue of whether any "relevant community" views the recognized stature of the Artwork.  Plaintiffs have alleged that the Artwork is recognized by experts and treasured by the community of Chinatown, a relevant "cross-section of society" that is critical to the determination of the Artworks' recognized stature.  *See Carter*, 861 F. Supp.  at 325.  It is simply premature to require Plaintiffs to provide additional evidence proving that Artwork is of

recognized stature at the motion to dismiss stage.  *See Hunter*, 413 F. Supp. at 520; *Martin*, 192

F.3d at 612; *Carter*, 861 F. Supp.[3]

     Based on the foregoing, the Court should deny Defendants' Motion to the extent it is

based on the stature of the Artwork.

     **B.**    <u>**The Complaint Sufficiently Pleads Harm to Plaintiffs' Honor and Reputation**</u>

     As with the Complaint's allegations regarding the recognized stature of the Artwork,

contrary to Defendants' arguments, the Complaint specifically alleges that Plaintiffs' honor and

reputation will be damaged as a result of Defendants' demolition of the Works at 124-125 White

Street, as is required by § 106A(a)(3)(A).  *See* Zilkha Decl., Ex. G Complaint ¶ 79 ("Plaintiffs'

honor and reputation as artists will be damaged if Defendants act on the City's stated intentions

to demolish 124-125 White Street."); ¶ 85 ("Any intentional distortion, mutilation, modification

or destruction of Plaintiffs' works of visual art would be prejudicial to Plaintiffs' honor and

reputation."); ¶ 39 ("Despite her many accolades, "Justice" remains one of her most prided

works. It was Snyder's opportunity to give back to the community to which she first moved

when she immigrated to the United States from China."); ¶ 49 ("Despite his many accolades,

"Immigration on the Lower East Side of New York" and "The Judgements of Solomon and Pao

Kung" remain amongst Haas' most important and preserved works of cultural significance and

community value"). This is sufficient to allege a claim under VARA at this stage of the

pleadings. *See Pavia v. 1120 Ave. of the Americas Assoc.,* 901 F. Supp. 620

---

[3] While Defendants rely on the Court's preliminary decision on the standard for injunctive relief that the Artwork is
not of recognized stature, the Court appropriately noted that those finding were preliminary and "subject to
revision." Zilka Decl. at Ex. F Transcript 51: 10-15 ("And so we are at a stage in the proceedings where I am on
obliged to make findings. They are preliminary findings. They are preliminary findings in the sense that they are findings for the purpose of
deciding on a motion for preliminary injunction. They're subject to revision, if the case goes forward, at trial or on a
motion for summary judgment").

(S.D.N.Y.1995) ("Furthermore, Pavia's allegations that alteration of the work of art has prejudiced his honor and reputation are sufficient to bring the acts within the scope of VARA.") Indeed, VARA does not explicitly define the terms prejudicial, honor, or reputation. *Massachusetts Museum of Contemporary Art Foundation, Inc. v. Buchel*, 593 F.3d 38, 54 (1st Cir. 2010). Further, the courts have refused to resolve the question of harm to artist reputation at the motion to dismiss, and even motion for summary judgment phase. *See Massachusetts Museum of Contemporary Art Foundation, Inc.*, 593 F.3d at 57; *Leveille v. Upchurch*, 2021 U.S. Dist. LEXIS 248486, \*22-24 (refusing to resolve the question of damage to the plaintiff's reputation in relation to the altered artwork on defendant's motion for summary judgment because "Though the allegations of damage are conclusory, it can be reasonably inferred from the facts alleged that Plaintiff's reputation would be harmed by Defendant's alterations to the Works. Defendant's actions could reasonably lead to the Works and, by extension, Plaintiff's name and reputation in the artistic community being mocked and ridiculed. Plaintiff is entitled to the benefit of such inferences at this stage of the case." citing *Iqbal*, 556 U.S. at 678.)

Whether an artist is prejudiced by the destruction or mutilation of his or her artwork is a fact-intensive inquiry that is not resolvable on a pre-answer motion to dismiss. Congress has noted that the prejudice inquiry should "examine the way in which a work has been modified and the professional reputation of the author of the work." *Id.* (citing H.R. REP. 101-514, 1990 U.S.C.C.A.N. 6915, 6925-26 (footnotes omitted)). As with the matter of whether the Artwork is of recognized stature, the issue of whether any intentional distortion, mutilation, or modification of a work would be prejudicial to the artists' honor or reputation presents an issue of fact that cannot be resolved at the motion to dismiss stage. Courts consider whether such alteration would cause injury or damage to the artists' good name, public esteem, or reputation in the artistic

community.  *Carter*, 861 F. Supp. at  An artist may show that their honor or reputation may be harmed if the artwork will "present[] to viewers an artistic vision materially different from that intended by [the artist]." *Id.*

Here, it is obvious from the context of the allegations that the destruction of the Artwork is prejudicial to Plaintiffs' honor and reputations.  As Snyder stressed during the public hearings regarding the Removal Plan, "the Removal Plan says very little about the artists themselves, despite the importance of the artists behind the Artwork." (Zilkha Decl., Ex. G Complaint ¶ 67). Additionally, by removing Plaintiffs' Artwork from its current location, the Artwork will be deprived of the context in which they are situated, thus obliterating the cultural value of the Artwork. *See, e.g.*, *id.* ¶ 6 ("Without the context of the geographical location in which the works are installed, the vision depicted by Plaintiffs' work will be incomplete and the immigrant struggle and wish for justice that are depicted in the works will lose their value."); ¶ 4 ("Chinatown has long been a home for immigrant communities, and since Plaintiffs' completion of the artwork at the Manhattan Detention Complex in the 1990s, the artwork has served as a reminder of the waves of the cultural significance of the community."); ¶ 9 (alleging that Plaintiffs public artwork depicts the history of [the] community and is culturally significant to Chinatown); ¶ 35 ("The artwork depicts the history of the cultures that have inhabited the Lower East Side and the Chinatown area and are of heightened significance and value because of their geographical placement.")

As alleged in the Complaint, Plaintiffs Snyder and Haas' worked in joint collaboration to create the Artwork.  *See id.* ¶¶ 1, 32.  Additionally, each Plaintiffs' individual contributions are comprised of multiple components.  *See id.* ¶¶ 40-44; 50-54.  Whether the Artwork is viewed as one all-encompassing work, two works created by the two artist Plaintiffs, or multiple works, the

destruction of certain components of the Artwork (i.e., Snyder's "Upright," and Haas'
"Immigration on the Lower East Side of New York" ) will utterly distort and modify the entire
Artwork as to present a materially different artistic visual to viewers that damages the reputation
and honor of Plaintiffs.[4]

 In sum, at this phase of the litigation, as with *Leveille* and *Massachusetts Museum of
Contemporary Art Foundation, Inc.*, Plaintiffs are entitled to the reasonable inference that the
City's disregard of them as artists and obliteration of the cultural value of the Artwork is
prejudicial to their honor and reputation within the community.[5]

###  C. Defendants' Arguments About Whether the Works Constitute Visual Art And Are Separate Pieces Are Based On Mischaracterizing the Complaint

 In arguing that not all of the pieces that make up the Artwork constitute visual art for
purposes of VARA, Defendants completely disregard established precedent from the Second
Circuit regarding what makes artwork protected visual art.  Defendants also incorrectly treat
portions of the Court's decision on Plaintiffs' motion for a preliminary injunction, which applied
a completely different legal standard, as conclusions of fact, when they were instead preliminary
findings subject to revision at a later stage of the proceeding.  The standard here is one for a pre-
answer motion to dismiss, not the standard on a motion for a preliminary injunction.  The
Complaint absolutely alleges enough to survive the standard on a motion to dismiss, and
Plaintiffs should have their opportunity to obtain discovery and an opportunity to prove their
allegations.

---

[4] As discussed *infra*, at this point of the proceedings, the Court has not yet definitely ruled as to whether the Artwork
is to be treated as one work, two works, or multiple works, further making dismissal on this issue improper on
Defendants' Motion to Dismiss.
[5] Plaintiffs maintain that they have adequately plead that Defendants have or will intentionally distort, mutilate, or
otherwise physically modify the Artwork in a way that will present a mpaterially different artistic vision to viewers
and will prejudice the Plaintiffs' honor and reputations.  Notwithstanding the foregoing, Plaintiffs note this inquiry
is only relevant to § 106(a)(3)(A), and not § 106(a)(3)(B), which Plaintiffs have plead in the alternative.

When determining whether a particular work falls within the scope of the definition of "works of visual art", "'[t]he courts should use common sense and generally accepted standards of the artistic community.'"  *Carter*, 861 F. Supp. at 316 (reversed on other grounds) (quoting H.R. Rep. No. 101-514, 101st Cong., 2d Sess. 11 (1990), reprinted in, 1990 U.S.C.C.A.N. at 6921).  Accordingly, "whether a particular work falls within the definition should not depend on the medium or materials used," and "the term 'painting' includes murals, works created on canvas, and the like."  H.R. Rep. No. 101-514, 101st Cong., 2d Sess. 11 (1990), reprinted in, 1990 U.S.C.C.A.N. at 6921.

When there are multiple pieces of artwork in the same general location, the pieces of art may be considered to be multiple components of a single work of art for determining whether the sum is a "work of visual art."  *Carter*, 71 F.3d at 84; 861 F. Supp. at 314.  For instance, in *Carter v. Helmsley-Spear, Inc.*, the Second Circuit determined that artwork consisting of "sculptural elements constructed from recycled materials, much of it metal, affixed to the walls and ceiling, and a vast mosaic made from pieces of recycled glass embedded in the floor and walls" constituted a single work of art, because the various elements were interrelated, appeared to form an integrated whole, and were thematically consistent. *71 F.3d at 80.*  When the defendants argued that certain pieces of the artwork were "applied art" and thus excluded from VARA protection, the Second Circuit agreed with the Southern District of New York's determination that the artwork, as a single unit, fell within VARA's protection as a "work of visual art."  71 F.3d at 84; 861 F. Supp. at 314. Even further, the Second Circuit held: "The district court correctly stated that even if components of the work standing alone were applied art, 'nothing in VARA proscribes protection of works of visual art that incorporate elements of, rather than constitute, applied art.'"  71 F.3d at 85.  The Southern District of New York had also noted:

"Indeed, the legislative history of VARA indicates that Congress intended that a work of art can be a 'work of visual art' as defined by VARA even if it incorporates elements of applied art." 861 F. Supp. at 315-16 (citing H.R. Rep. No. 101-514, 101st Cong., 2d Sess. 13-14, *reprinted in,* 1990 U.S.C.C.A.N. at 6923-24).

Defendants argue first that "Upright", on its own, is not protected because it is applied art, and that other components of the Artwork are not protected because the Artwork is one not one single piece. Both of these contentions must be rejected.

Even taken on its own, "Upright" is not applied art, but is instead visual art protected by VARA. The paving pattern of Snyder's "Upright" is clearly analogous to the mosaic floors at issue in *Carter*, which the Second Circuit held was a "work of visual art" on its own, even though it was utilitarian in that it was the floor of the lobby. 71 F.3d at 85. As the Court astutely asked during oral argument on Plaintiff's motion for a preliminary injunction: "Suppose somebody takes a big Jackson Pollock canvas and decides to put it down on the floor, does that make it a piece of applied art on the theory that you can walk on it?" (Zilkha Decl., Ex. F 35:8-11). The answer is unequivocally "no" – a Jackson Pollock canvas is absolutely visual art, even if it is, in part, utilitarian in that someone can walk on it, just as Snyder's "Upright" is visual art regardless of whether it is part of a walkway; the paver design and tree placement constitute the art. As the Court later pointed out, if the art were to be removed from the walkway, the walkway would still exist but the art would not. (Zilkha Decl., Ex. F 36:7-9) ("No, the walkway is then the level gravel bed. If you pull up all those paving stones, there's still going to be a level place to walk.") The Court ultimately held that Plaintiffs are likely to prevail on its argument that "Upright" is a work of visual art protected by VARA. (Zilkha Decl., Ex. F 53:7-10)

Ironically, even though Defendants choose to completely ignore the Court's holding that Plaintiffs are likely to prevail on "Upright" being a work of visual art, Defendants disproportionately rely upon the Court's findings as to whether the components of the Artwork constitute one single piece of visual art.  As the Court appropriately noted, its finding were preliminary and "subject to revision." (Zilkha Decl., Ex. F 52: 10-17).  Here, the standard is whether, assuming the truth of the plaintiff's allegations, the plaintiff has plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp*., 550 U.S. at 570.

Here, the Complaint explicitly alleges that the Artwork constitutes a single integrated piece.  (Zilkha Decl., Ex. G Complaint ¶ 58 ("The Removal Plan improperly treats each portion of the Artwork as a separate piece and makes no provision for reuniting the different pieces of the Artwork at a later date."); ¶ 32) ("The design of the Artwork in the public plaza outside of the Manhattan Detention Complex was a collaboration between Plaintiff Haas and Plaintiff Snyder").  Taking the Artwork as a whole, the Artwork, as alleged in the Complaint, clearly falls squarely within VARA's definition of "works of visual art" and mandates VARA's protection. The Artwork is comprised of sculptures and paintings, which are expressly called out in the definition of "works of visual arts" in the statutory text of VARA. 17 U.S.C. § 101.

This is all that is necessary on a motion to dismiss.  Plaintiffs are not required to prove this at such an early stage of a litigation, but are instead required to allege it; which Plaintiffs did. Plaintiffs are entitled to discovery and to pursue their litigation to establish that the Artwork is thematically consistent, and was created to be one single work of art. *See Pavia v. 1120 Ave. of the Americas Assoc.,* 901 F.Supp. 620 (S.D.N.Y.1995) ("Continuing to take Pavia's factual allegations to be true for the purposes of this motion, "The Ides of March" falls within the category of works protected under VARA. . . . Despite the fact that it consists of four separate

elements, "The Ides of March" is alleged to be a single work of art whose elements "form an integrated whole… As a single piece, "The Ides of March" thus meets the statutory definition of "work of visual art" for the purposes of this motion."); *see also Mackenzie-Childs, Ltd. v. Mackenzie-Childs*, No. 06-CV-6107T, 2008 U.S. Dist. LEXIS 1717, at *19-20 (W.D.N.Y. Jan 9, 2008) (finding that summary judgment "with respect to [the] VARA counterclaims [was] premature" because the "court [could not] make such a finding as a matter of law given the fact that no discovery [had] taken place on the issue."  Plaintiffs may not have shown enough before discovery to convince the Court to issue an injunction to stop the demolition of the Manhattan Detention Center, but Plaintiffs have certainly alleged enough to survive a motion to dismiss and to have an opportunity to prove their allegations after discovery.

**D.      The Works are Not Covered by Any Exception to VARA**

   a.      *Defendants Falsely Mischaracterize The Destruction of the Works as "Relocation"*

   While Courts have found that simply relocating a work "does not by itself constitute distortion, mutilation or modification under VARA," contrary to Defendants' argument, no "relocation" of the Artwork is threatened by Defendants.  Pursuant to the Removal Plan, and as acknowledged by Defendants, Snyder's "Upright," and Haas' "Immigration on the Lower East Side of New York" will be completely *destroyed*. (Zilkha Decl., Ex. G Complaint ¶¶ 59-62). Destroying even one portion of the Artwork destroys or mutilates the entirety of the Artwork.

   Even if this theory that the Artwork constitutes one single piece of art is not accepted, "Upright" and "Immigration on the Lower East Side of New York" are clearly being physically destroyed in an irreparable fashion.  *See* § 106A(a)(3)(B).  The remainder of the Artwork will be mutilated and distorted in such a way it will no longer be recognizable as the Plaintiffs' work and will not  convey the same message and artistic vision intended by the Plaintiffs. (*See, e.g.*,

Zilkha Decl., Ex. G Complaint ¶ 6 ("Without the context of the geographical location in which the works are installed, the vision depicted by Plaintiffs' work will be incomplete and the immigrant struggle and wish for justice that are depicted in the works will lose their value."); ¶ 4 ("Chinatown has long been a home for immigrant communities, and since Plaintiffs' completion of the artwork at the Manhattan Detention Complex in the 1990s, the artwork has served as a reminder of the waves of the cultural significance of the community"); ¶ 9 (alleging that Plaintiffs public artwork depicts the history of [the] community and is culturally significant to Chinatown); ¶ 35 ("The artwork depicts the history of the cultures that have inhabited the Lower East Side and the Chinatown area and are of heightened significance and value because of their geographical placement.")).

In any event, "whether a particular work of art has been "distorted," "mutilated," "modified," or "destroyed," is a question of fact inappropriate at the motion to dismiss stage." *Holbrook v. City of Pittsburgh*, No. 18-539, 2019 U.S. Dist. LEXIS 159129, at *11 (W.D. Pa. Sep. 16, 2019) ("whether a particular work of art has been 'distorted,' 'mutilated,' 'modified,' or 'destroyed,' is a question of fact inappropriate at the motion to dismiss stage. Accordingly, Defendants' Objections as to the VARA claim are overruled.")

      b.    *Defendants Arguments Concerning the Building Exception Fail for Multiple Reasons*

Defendants argue that VARA does not apply to artwork that has been incorporated into a building if such artwork has been incorporated in a way that removing the work from the building will cause the destruction, distortion, mutilation or other modification of the work, and the artist "consented to the installation of the work in the building . . . in a written instrument."

Defendants wrongly contend that "Immigration on the Lower East Side of New York" falls within this exception to VARA protection because Haas executed an agreement to create

and install the Artwork prior to the enactment of VARA.  This argument completely ignores that 17 U.S.C. § 113(d)(1) also provides that the written instrument must be "signed by the owner of the building and the author and that specifies that the installation of the work may subject the work to destruction, distortion, mutilation, or other modification, by reason of its removal. . ."

Here, neither Plaintiff has consented to the destruction of their Artwork either before or after the effective date of VARA as contemplated by § 113(d), and in fact, the original contract governing the commission of the Artwork (the "Agreement") specifically promises otherwise. To the contrary, prior to the Plaintiffs installing the Artwork, the City specifically represented, assured, and agreed to the Plaintiffs that it would "not intentionally destroy, damage, alter, modify or change the Art Work in any way…." ( Zilkha Decl., Ex. G Complaint ¶¶ 89- 90, Ex A, at § 7.4).  Haas did not give the consent required for application of this exclusion.

Additionally, the original design for the sixth panel of "Immigration on the Lower East Side of Manhattan," intended to represent the Hispanic immigrant culture in the neighboring areas, came under controversy in 1992, and Haas repainted the panel, completing the Artwork in 1997. (Zilkha Decl., Ex. G Complaint ¶ 54; *see also* ¶ 33 ("the project was further extended when one panel of Haas' original six panel installation of his work "Immigration on the Lower East Side of New York" was repainted in 1997")).  This new panel was not governed by the Agreement, but rather was completed after title to the Artwork was transferred to the City. (Zilkha Decl., Ex. G Complaint ¶¶ 33, Complaint Ex. A at §§ 1.7, 1.9, 2.1).  Accordingly, the Agreement to create and install the sixth panel was made after the enactment of VARA.

Lastly, Defendants argue that if the Court finds that the Artwork is one single work of art, then all of the Artwork would fall within the building exception to VARA, and therefore none of the components of the Artwork should be protected by VARA.  This rigid and dogmatic

interpretation is contrary to the spirit of VARA.  If the Court were to ultimately find that "Immigration on the Lower East Side of Manhattan" is susceptible to the building exception, the Court should follow established precedent to parse out and protect the other components.  *See Carter*, 71 F.3d at 84; 861 F. Supp. at 314.

> c.       *Contrary to Defendants' Argument, the Complaint Does Not Allege That Upright Has Been Modified as a result of the "Passage of Time"*

Defendants argue that if "Upright" is determined to be a piece of visual art for the purposes of VARA, any destruction that would prevent it from being relocated would be based on the fact that it is "in poor condition overall" because it is a walkway in a public space that has been in use for more than two decades. *See* Motion at pg. 19.  Thus, Defendants argue that even if "Upright" were considered to be a piece of visual art, its existence as a walkway and the wear it has endured as such would exempt it from protection under VARA. *See* Motion at 19.

This argument is entirety misguided.  First, Defendants ignore the distinction between claims under § 106A(a)(3)(A) and (a)(3)(B).  Plaintiffs have plead both sections in the alternative.  while it is true that modifications resulting from "the passage of time or the inherent nature of the materials" are excluded from the scope of section *106A(a)(3)(A)*, as are modifications that are the result of conservation (§ 106A(c)(2)), they are not so excluded from the scope of section 106(a)(3)(B).

Second, Defendants' attempt to assert a defense based on the "passage of time" in the Motion is inappropriate.  *Nowhere* in the Complaint do Plaintiffs ever allege that the "passage of time" or the "inherent nature of the materials" is what is causing the destruction of the Artwork. *See* § 106A(c)(1). To the contrary, Plaintiffs have alleged that any deterioration to the Artwork has been intentionally caused by Defendants, who were contractually responsible for maintaining the Artwork. (Zilkha Decl., Ex. G Complaint Ex. A §§ 7.2, 7.3).  Plaintiffs do not assert that the

"passage of time" is responsible for the condition of Upright because that is not the case.  Any "poor" condition of the Artwork was caused by the City's intentional act of causing the Artwork to be used as a parking lot for City workers.

Third, Defendants' assertion that "Upright" is in "poor condition overall" based on the "passage of time" is a blatant misrepresentation of the facts.  Defendants acts towards Plaintiff Snyder's acts were willful.  Importantly, modifications caused by "gross negligence" are not excepted from the protection of VARA. 17 U.S.C. 106A(c)(2).  Defendants have willfully violated the terms of the Agreement with Plaintiffs to safeguard, repair, and maintain the Artwork.  The City has modified the art with the requisite gross negligence and indeed, intent, by purposefully painting parking lot divider lines over Snyder's work "Upright."  The City cannot escape its obligations to Plaintiffs under VARA by virtue of its willful neglect in allowing the Artwork to be thrust into a "poor" condition, as claimed by the City.  The City must not be permitted to benefit from its breach of its contractual promise to maintain the Artwork, and its intentional treatment of "Upright."

Finally, Plaintiffs, and particularly Snyder, should have the opportunity to establish during discovery that attempts were made to induce Defendants to maintain the Artwork, and specifically "Upright" throughout the years.  At this pre-answer motion to dismiss phase of the litigation, all inferences should be drawn in Plaintiffs' favor.

## IV.    Should It Be Warranted, Plaintiff Respectfully Requests Permission To File a Motion for Leave to Amend the Complaint

Notwithstanding Plaintiffs' position that, for the reasons explained herein, Plaintiffs' VARA claims are sufficiently pled, in the event that any portion of Defendants' Motion is granted, Plaintiffs request permission to file a motion seeking leave to amend the Complaint. *See* Fed. R. Civ. P. 15(a)(2); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48

(2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160, 190 (2d Cir. 2015) ("[T]he permissive standard of rule 15 is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits.") (internal quotation marks and citations omitted); *Cresci v. Mohawk Valley Cmty. Coll.*, 693 Fed. Appx .21, 25 (2d Cir 2017) ("The proper time for a plaintiff to move to amend the complaint is when the plaintiff learns from the District Court in what respects the complaint is deficient."); *Kopchik v. Town of E. Fishkill,* 759 Fed. Appx. 31, 38, 2018 U.S. Dist. LEXIS 36443 (2d Cir. 2018) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies"). Such amended complaint would include, if necessary, additional facts relating to the recognized stature of the Artwork, the harm to the honor and reputation of Plaintiffs, the collaborative nature of the Artwork, and additional facts as to any portion of Defendants' Motion that is granted.  For example, if necessary, Plaintiffs would include allegations reflecting facts and evidence from experts, community members and other individuals, Plaintiffs, and their friends and relatives, as well as additional recognition of the Artworks.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants'

Motion to Dismiss in its entirety. If the Court is inclined to grant any portion of Defendants'

motion, Plaintiffs respectfully request leave to amend.


Dated:  New York, New York
        September 5, 2022

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By: */s/ Robert Friedman*
        ROBERT S. FRIEDMAN
        DANIEL BROWN
        EMILY D. ANDERSON
        CHLOE CHUNG (*pro hac vice*)

30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700

*Attorneys for Plaintiffs*
KIT-YIN SNYDER AND RICHARD HAAS